UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  CASE NO.: 8:11-cr-410-T-23TBM

MICHAEL RENARD ALBURY, JR.
_____/

## ORDER

The defendant, Michael Renard Albury, Jr., moves (Docs. 11 and 37) to suppress evidence seized during a search, and the United States opposes (Docs. 26 and 39) the motion. After an evidentiary hearing (Docs. 31 and 32), the magistrate judge recommends (Doc. 44) granting the defendant's motion. The United States objects (Doc. 47) to the magistrate judge's recommendation, and the defendant responds (Doc. 52) in support of the recommendation. A hearing (Doc. 62) on the United States objections occurred on March 9, 2012.

## THE ISSUE

The recommendation of the magistrate judge includes detailed fact findings in connection with the search of room 342 and room 332 at the Holiday Inn Express in Bradenton, Florida, on July 26, 2011. The magistrate judge (1) concludes that the search conducted in room 332 impinged the Fourth Amendment rights of the defendant and (2) recommends suppression of both the evidence extracted from room

332 and the evidence consequent upon that evidence. The evidence in support of the defendant's motion confirms entirely the magistrate judge's findings of fact.

However, the United States' objection to the magistrate judge's recommendation presents a question arising from *United States v. Glinton*, 154 F. 3d 1245 (11th Cir. 1998), *cert. denied*, 526 U. S. 1032 (1999), *cert. denied*, 526 U. S. 1104 (1999): Assuming excision from the officer's supporting affidavit (Doc. 11-3) of the evidence that the police obtained by an unlawful search of room 332, does the affidavit remain sufficient to support both probable cause and issuance of the search warrant? The magistrate judge expressly addresses this question in the report and recommendation (Doc. 44 at 14-15).

## **DISCUSSION**

In the findings of fact in his report, the magistrate judge narrates the pertinent discovery by the employee Blackwell and the discovery soon afterward by police of the evidence in room 342:

> Blackwell is the maintenance chief at the Holiday Inn Express. He is a twenty-one year military veteran with small firearms experience. On July 26, 2011, he was repairing a leaking pipe in room 342. When he first entered room 342, he noticed lots of papers, empty pizza boxes, food containers, cups, and other items laying on the floor. The [defendant] had moved out of the room into another room about three hours earlier. Blackwell began cleaning the room, picking up papers, food containers and the like, and throwing them in a large plastic garbage bag. [Blackwell] saw white powder residue on the desktop, which he wiped off into the bag by running his hand across the surface. . . . Blackwell also testified that when he first entered the room and was walking through it, he kicked what turned out to be a loaded, 45 caliber Glock handgun. . . . [T]wo uniformed police officers arrived . . . about 11:00 in the morning. [Blackwell] showed them room 342 and

- 2 -

> they found sandwich bags, the cocaine residue and a ½ cookie of crack cocaine in a night stand.

In sum, the police were invited into room 342, a room occupied for several days by the defendant but vacated by the defendant in favor of room 332 only a few hours earlier and after the defendant reported a water leak in the bathroom of room 342. The defendant moved directly to room 332, a nearby room on the same floor. In room 342, the police found (or a motel employee found and soon displayed to the police) a large zip-lock bag with cocaine residue that lined the entire bag, several smaller sandwich bags lined with cocaine residue, chunks of a "crack" cocaine "cookie," a loaded .45 caliber Glock handgun (the officer's affidavit reports a .40 caliber handgun), and traces of cocaine on a night stand and a desk.

Of course, the evidence discovered in room 342, compellingly suggestive of cocaine possession and distribution, created probable cause to conclude that the occupant of room 342 had possessed with the intent to distribute and had distributed a quantity of cocaine, both powder and "crack" cocaine. Quite independent of any unlawful search of room 332, the officer who submitted the affidavit also discovered and included in the affidavit that the defendant was on "inmate release status" for trafficking in cocaine and had a 2008 felony conviction for trafficking cocaine. As a convicted felon, the defendant was prohibited from possessing a firearm.

The question raised by the assumed excision from the affidavit supporting the warrant application of any evidence associated with the unlawful search of room 332

is this: Does a convicted drug trafficker's both feloniously possessing and distributing cocaine and feloniously possessing a firearm while occupying room 342 create a practical, fair, and common sense probability that the same convicted drug trafficker possesses in nearby room 332, to which he transferred directly and immediately after leaving room 342, evidence of the felonious possession and distribution that occurred in room 342? Unsurprisingly, the question appears often and with an answer in the authoritative and persuasive precedent.

For example, in *United States v. Williams*, 974 F. 2d 480 (4th Cir. 1992), police stopped Williams for a traffic offense, a drivers license check revealed that Williams was the subject of a fugitive warrant in another Virginia county, and the officer immediately arrested Williams. An inventory search of Williams's car revealed "a concealed knife and several small plastic bags containing suspected drug residue." Also, Williams "possessed a receipt from the Statesman Motor Lodge . . . showing that he had paid $280 for a room" for a week's stay. Further inquiry revealed that Williams was wanted in Maryland for possession with the intent to distribute drugs and that Williams had seven previous "drug-related arrests." Based on an "affidavit summarizing these facts," a magistrate judge issued a search warrant for Williams's room at the Statesman Motor Lodge, the consequent search of which yielded $1300 in cash, a triple-beam scale, marijuana residue, rolling papers, plastic bags with a white powdery residue, and 325 grams of cocaine. The district judge overruled the

magistrate judge and granted the motion to suppress. The Fourth Circuit reversed the district judge:

> The affidavit submitted to the magistrate clearly establishes that Williams was a drug dealer. The Affidavit also contains evidence that Williams was currently residing in the Statesman Motor Lodge. With this evidence before him, the magistrate must consider, in the light of all the surrounding circumstances, the likelihood that drug paraphernalia would be found in the motel room of a known drug dealer. The magistrate concluded that there was a fair probability that drug paraphernalia would be found in Williams' motel room and issued the search warrant. The affidavit submitted to the magistrate fully supports this conclusion.

In the instant case, factually parallel to *Williams*, the unchallenged evidence, including drugs and a handgun, in room 342, along with the independent evidence of the defendant's "inmate release status" and a trafficking conviction, evidenced a likelihood that Albury was a drug dealer. To paraphrase *Williams*, this creates "a fair probability that [evidence of the crime] would be found in [Albury's] motel room." Unlike in *Williams*, Albury's then-current residence, room 332, was only a few seconds away, on the same floor, and in the same motel as his former residence, room 342, in which the evidence was located; in *Williams*, the car and the motel room were less proximate (but the pertinent inferences were perhaps equally or nearly as strong). *See also*, *United States v. Williams*, 40 Fed. Appx. 843 (4th Cir. 2002), *cert. denied*, 537 U. S. 1112 (2003) (holding evidence of drug trafficking from the defendant's automobile offered probable cause for a warrant for the defendant's residence); *United States v. Malin*, 908 F. 2d 163 (7th Cir. 1990), *cert. denied*, 498 U. S.

991 (1990) (holding that an officer's observation of six marijuana plants in the defendant's fenced back yard supported probable cause to believe that other evidence the crime existed in the adjoining residence); *State v. Ruoho*, 685 N.W. 2d 451 (Minn. App. 2004), *review denied* (Nov. 16, 2004) (holding that evidence gathered without a warrant from the formerly occupied "unit 3" of a motel was sufficient to obtain a warrant to search newly occupied "unit 12"); *People v. Reed*, 56 P. 3d 96 (Col. 2002) (finding that precursors of methamphetamine, discovered after the defendant vacated room 3 at the Loveland Motel, were sufficient to support a warrant to search room 12 of the Loveland Motel); *State v. McCoy*, 397 S. E. 2d 355 (N. C. App. 1990) (finding that evidence of a cocaine sale by the defendant on August 15 at room 203 of the Econo Lodge on Germantown Road in Winston-Salem and a cocaine sale by the defendant on August 21 at room 209 of the same Econo Lodge constituted probable cause for a August 25 warrant to search room 406 of the InnKeeper Motel on Peters Creek Parkway in Winston-Salem; holding that "the circumstances of the two prior sales of cocaine in other motel rooms within a ten-day period reasonably leads to the inference that cocaine could be found in the third room").[*]

---

[*] Interestingly, in *United States v. Halliman*, 923 F. 2d 873 (D. C. Cir. 1991), then-Judge Clarence Thomas (for a unanimous three-judge panel including then-Judge Ruth Bader Ginsburg and now Chief Judge David Sentelle) affirmed the denial by District Judge Thomas Hogan of a motion to suppress evidence uncovered during the search of a Holiday Inn on Rhode Island Avenue in Washington, D.C. The defendant and his associates had recently switched from rooms 601 and 602 to rooms 903, 806, and 918. 923 F. 2d at 875. With the cooperation of hotel staff, a police search of abandoned rooms 601 and 602 "found cocaine residue, marijuana, and a round of ammunition." A few days later, police learned that "the hotel's cleaning staff had seen handguns in room 903, which members of the group continued to occupy." Based on information from rooms 601 and 602 and upon staff reports about room 903, police successfully sought a

(continued...)

- 6 -

In his widely cited *Search and Seizure: A Treatise on the Fourth Amendment*, Vol. 2, § 3.7(d), Professor Wayne LaFave discusses at length what he denominates "the more complicated probable cause determination" in a case involving "four ingredients: time; crime; objects, and place." Professor LaFave reminds the reader that to establish probable cause "it is still necessary that there be established a sufficient nexus between (1) criminal activity, (2) the things to be seized, and (3) the place to be searched." The entirety of Professor LaFave's discussion in Section 3.7(d) and the distinct weight of the authority, both state and federal, upon which the discussion relies, situate the facts of the instant case comfortably within the boundary of probable cause.

Room 342 contained evidence of drug possession and distribution (although the distribution quantity of cocaine inventory had moved, apparently from room 342 to room 332); the things to be seized in room 332 are of the same nature as those observed in room 342; the place to be searched, room 332, is immediately proximate to room 342 (more proximate than in any cited or discovered precedent); and the

---

*(...continued)
search warrant for rooms 806, 903, and 918, occupied by this mobile group. However, as the police assembled at the police station to prepare for the search of rooms 806, 903, and 918, officer Haynie at the motel telephoned officer Simpson at the police station with information that the defendant had just rented room 900. Although the decision in *Halliman* revolves around exigent circumstances attending a forced entry to room 900 and the search of other rooms, the opinion states, "We recognize, as did the district court, that the police officers had probable cause to search room 900 immediately after Haynie called Simpson at the station. [record citation omitted] 'The information in the affidavit supporting the warrants for rooms 903, 918, and 806 would also have justified a warrant for room 900' and 'the police had fresh information from Haynie that the suspects were using the room.'" In other words, although not ultimately decisive of the outcome in *Halliman*, the court troubled not in the least and hesitated not at all – not once, but twice – in recognizing that a drug and gun presence in one room creates probable cause to search another room to which the occupant directly transfers.

defendant went directly and immediately from 342 to 332, leaving behind drugs and a gun. The strong identity of time, crime, objects, and place combine in this instance to establish the unmistakable and logical nexus between room 342 and room 332 that equates to the existence of probable cause and issuance of a search warrant. To deny that the contents of room 342 constitute probable cause to search nearby room 332 in the circumstances of this case would situate this case irreconcilably athwart the considerable force of applicable precedent and authoritative commentary.

## **CONCLUSION**

I find that the magistrate judge has erred (1) in concluding that, independent of any tainted evidence, the untainted evidence discovered in room 342 and from police records and included in the warrant application failed to establish probable cause to search room 332 and (2) in recommending that I grant the motion to suppress. After careful and respectful consideration of the magistrate judge's recommendation, I sustain the objection of the United States because I find that the evidence observed in room 342, which evidence remains unchallenged (the magistrate judge notes at page two of his report that "[t]he motion does not challenge the seizure of drugs and other matters from room 342"), in conjunction with other information known to the officer independent of the search and included in the affidavit submitted in applying for the warrant, provides ample probable cause to support the search warrant.

Although the magistrate judge identifies inexcusable and troubling misstatements in the officer's affidavit, the warrant is saved by the well-known (and

- 8 -

hotly disputed) "independent source exception," applied in *Glinton*, 154 F. 3d at 1254, and confirmed by Chief Justice Berger in *Segura v. United States*, 468 U. S. 796 (1984). As explained in *United States v. Markling*, 7 F. 3d 1309, 1315 (7th Cir. 1993):

> The Supreme Court has determined that "'the interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position than they would have been in if no policy error or misconduct had occurred.'" [citations omitted] Excluding evidence that the police ultimately obtained by independent legal means would not put the police in the same position they would have been in if they had not committed any illegal conduct; instead, it would put them in a worse position. The independent source doctrine avoids this by allowing introduction of evidence discovered initially during an unlawful search if the evidence is discovered later through a source that is untainted by the initial illegality.

The United States' objection is **SUSTAINED**, the magistrate judge's recommendation is **DECLINED**, and the motion to suppress is **DENIED**.

ORDERED in Tampa, Florida, on April 17, 2012.

*Steven D. Merryday*
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE
